[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEBRUARY 26, 2008
THOMAS K. KAHN
CLERK

No. 07-13079
Non-Argument Calendar

_____

D. C. Docket No. 05-00044-CR-1-SPM

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CARL PETER JONES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

**(February 26, 2008)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

This is Carl Jones' appeal of his convictions for possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and knowing possession of stolen firearms in violation of 18 U.S.C. § 922(j).

**I.**

Joseph Szymanski, a security guard at Santa Fe High School in Alachua, Florida, lived in a mobile home trailer parked on the school grounds. On June 12, 2005, he left the school's grounds around seven or eight o'clock in the evening, locking the school's entry gate behind him. Upon returning around midnight, Szymanski saw that his trailer's window was open. Inside, his belongings were in disarray. Szymanski noticed that his revolver and rifle were missing and called the police. While on the phone with the police, Szymanski heard a shot that he believed came from the nearby wooded area. Later inspection would reveal that the following items had been removed from Szymanski's trailer: a .22 caliber revolver; a .30-.30 caliber rifle; a .50 caliber muzzle loaded rifle; a pair of dress pants; a skill saw; a straw hat; a can of soup; and a valuable coin.

The police soon arrived, and they began to search around Szymanski's trailer. A police search dog and its handler were part of the search team. The handler located the missing rifle, pants, and saw. He also found a garbage bag about four feet away from the stolen items. The search dog then alerted to a tree leaning over the school's outer fence. The handler went outside the fence, where

2

he found a recently opened can of soup. At that point, the dog pulled back toward the fence. The handler looked and saw a man, later identified as Carl Jones, lying under a bush about ten feet away, approximately five feet from where the guns had been found. Jones was wearing Szymanski's straw hat and had a roll of garbage bags inside his waistband when the officers arrested him.

While the dog and its handler were searching the area immediately around the trailer, another officer found a backpack behind a bar across the interstate from the high school. It contained, among other things, Jones' birth certificate, social security card, and personal photographs.

In 2000, Jones had pleaded guilty to two felonies—burglary of a structure and grand theft—in Florida state court. As a result, he was charged with possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) in addition to a count of knowingly possessing stolen firearms in violation of 18 U.S.C. § 922(j). He pleaded not guilty to both counts of the indictment.

At trial, the government called eight witnesses. Five of the witnesses—four of the law enforcement officers who participated in the search and Szymanski—testified, cumulatively, to the series of events leading to Jones' arrest. The government also introduced into evidence all of Szymanski's property that had been recovered. One of the officers testified that a backpack had been found

3

behind a bar across the street. He attempted to describe the backpack's contents, but that testimony was not allowed because it was inadmissible hearsay.

In addition to the officers at the scene, the government called an agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The agent testified about the contents of a backpack that had been recovered but was unable to testify about where the backpack was found because that testimony would have been inadmissible hearsay. After the agent's testimony about the backpack, the government moved to admit it into evidence. Jones objected, arguing that the chain of custody was insufficient, that there was insufficient foundation, and that the backpack was irrelevant. The district court overruled the objections and admitted the backpack. Another ATF agent gave expert testimony that the revolver, the rifle, and the ammunition found in the weapons had traveled in interstate commerce.

The government also called the parole officer assigned to supervise Jones after his earlier offenses. She testified that she had told Jones that he was not permitted to possess a firearm. During her testimony, the government introduced unredacted copies of the state court judgments of Jones' earlier convictions for burglary and grand theft. Jones did not object at that time.

Following all of these witnesses, the government rested its case-in-chief. Jones then moved for a judgment of acquittal and renewed his objection to the

4

admission of the backpack. The court denied both motions. Jones declined to put on any evidence. During closing arguments, the government referred twice to the backpack, arguing that Jones' leaving it in the alley across the interstate was evidence that he had not simply wandered onto the school grounds but had come with the intent to commit a crime. The government also used a projector to display to the jury the unredacted judgments of conviction against Jones. After arguments, Jones again moved for a judgment of acquittal, and the court again denied it. Finally, Jones moved that the documents relating to his earlier convictions be redacted to exclude the details of his crimes before being sent back with the jury. The court denied this motion as well. The court then charged the jury.

During deliberations, the jury sent questions to the court, including one asking the distance from the backpack to the crime scene and the distance from the trailer to where Jones was found. The court told the jurors that they would have to rely on their recollection of the evidence presented at trial. After further deliberations, the jury found Jones guilty on both counts.

Jones now appeals, arguing that: (1) there was insufficient evidence to convict him; (2) admitting the backpack into evidence was reversible error; and (3) denying Jones' motion to redact the documents concerning his earlier convictions was reversible error.

## II.

Jones contends that the district court erred by denying his motions for a judgment of acquittal because, as a matter of law, there was insufficient evidence to prove beyond a reasonable doubt that he either actually or constructively possessed a firearm, which is a necessary element of both the crimes of which he was convicted. We review de novo the sufficiency of the evidence supporting a criminal conviction, but we examine the evidence in the light most favorable to the government and make all inferences and credibility choices in favor of the jury's verdict. United States v. Anderson, 289 F.3d 1321, 1325 (11th Cir. 2002).

The jury could have reasonably inferred that Jones had actual possession of the firearms. He was found inside the high school's locked fence shortly after the crime, wearing a hat that had been taken from the burglarized trailer, and he was lying five feet away from one of the stolen guns and other items taken from the trailer. Additionally, he had trash bags tucked into his waistband, and a trash bag was found near the stolen rifle. This is sufficient evidence for a reasonable jury to find that Jones had burglarized the trailer. If Jones did so, then he had actual possession of the guns when he carried them out of the trailer and onto the school grounds. It follows that there was sufficient evidence to convict Jones of knowingly possessing stolen firearms and possession of a firearm by a felon. We need not reach Jones' argument about whether there was sufficient evidence to prove constructive possession of the guns.

6

**III.**

Jones next contends that the district court erred in admitting the backpack into evidence because it was neither properly authenticated nor relevant. We review the district court's decision to admit evidence for abuse of discretion. Corwin v. Walt Disney World Co., 475 F.3d 1239, 1249 (11th Cir. 2007).

Jones' argument that the backpack was insufficiently authenticated is unavailing. We have long recognized that "gaps in the chain of custody affect only the weight of the evidence and not its admissibility." United States v. Roberson, 897 F.2d 1092, 1096 (11th Cir. 1990). Jones relies on Pilot Life Insurance v. Wise, 61 F.2d 481 (5th Cir. 1932), a civil case decided before the promulgation of the Federal Rules of Evidence, to argue to the contrary.[1] Pilot Life, however, stands only for the proposition that it is error to admit a piece of evidence when "there is no competent evidence in the record to support" its authentication. Meadows & Walker Drilling Co. v. Phillips Petroleum Co., 417 F.2d 378, 382 (5th Cir. 1969) (citing to Pilot Life for this proposition). Here, there was "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a) (setting the standard for authentication). A police officer who participated in the search testified without objection that a backpack was recovered

---

[1] All decisions from the Fifth Circuit rendered before October 1, 1981 are binding precedent on the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

7

from behind a bar across the interstate from the high school.  The ATF agent who tested the guns testified that the backpack introduced at trial contained Jones' identification and was the one given to him by the police officers who had searched the crime scene and surrounding areas.  Because there was competent evidence connecting the backpack to Jones and the crime, any gap in the chain of custody goes only to the weight of the evidence, not its admissibility.

Jones' argument that the backpack was irrelevant and should not have been admitted also fails.  Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  The presence of Jones' backpack and its contents across the interstate from where he was found on the school grounds tends to make it more probable that he burglarized Szymanski's trailer.  First, a person who intended to commit burglary, particularly by climbing through a window, would probably not choose to take a bulky bag with him because it could get in the way or slow his flight from the place of the crime.  Second, the backpack being found across the interstate makes it less likely that Jones was on the school grounds for an innocent reason because he would be unlikely to leave a bag containing all of his identification in an alley and simply wander elsewhere.  The location of the backpack tends to show that Jones was going someplace else for a specific reason and intended to return relatively

soon, which is consistent with his having intentionally left to commit a burglary. The backpack, its contents, and its location are circumstantial evidence and—while perhaps not compelling—are relevant.

## IV.

Finally, Jones contends that the district court erred in admitting the unredacted judgments of his prior convictions because they were overly prejudicial. He relies on the Supreme Court's decision in Old Chief v. United States, 519 U.S. 172, 117 S. Ct. 644 (1997). In that felon in possession case, the Supreme Court held that the district court abused its discretion by admitting the full record of the defendant's earlier conviction for assault, despite the defendant's offer to stipulate to his status as a felon. Id. at 174, 117 S. Ct. at 647. The Court reasoned that the evidence was substantially more prejudicial than probative, and therefore should not have been admitted under Federal Rule of Evidence 403, because the stipulation would have sufficiently proven the element of the offense, and the nature of the prior crime was likely to taint the jury's perception of the defendant. Id.

Old Chief, however, is not controlling here because Jones did not offer to stipulate to his status as a felon. Jones argues that he "effectively stipulate[d] to [his] prior felon status" when his attorney conceded it in his opening statement and did not attempt to impeach the probation officer through whom the government

9

introduced the evidence of his convictions. Neither of those actions or inactions is sufficient. To prove its case, the government needed to introduce evidence that Jones had "been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). It was not required to rely on Jones' attorney's concession in his opening statement alone, because opening statements are not evidence. United States v. Smith, 918 F.2d 1551, 1562 (11th Cir. 1990) ("statements and arguments of counsel are not evidence"). And the failure to attempt to impeach a witness on a particular topic does not stipulate to the truth of that witness' testimony. Not only that, but the unredacted exhibits were admitted into evidence during the parole officer's direct examination, so the government could not have known what Jones' attorney would do on cross-examination.

If a defendant does not stipulate to his status as a felon for purposes of 18 U.S.C. § 922(g)(1), then the government must put on evidence of his earlier felony convictions. Here, the government did so without objection. The information was published to the jury without objection. Only when the physical documents were going to be sent back to the jury room at the beginning of deliberations did Jones object. At that point, there was no additional prejudice that could have resulted because the jury already knew what crimes Jones had been convicted of. Therefore, the probative value of the evidence was not "substantially outweighed

10

by the danger of unfair prejudice." Fed. R. Evid. 403. The district court did not abuse its discretion.

AFFIRMED.